UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UCP BIOSCIENCES, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN SCREENING, LLC, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-0886-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 24 |

　　　　Before the Court is defendants American Screening, LLC, Biostat Laboratories, Kilgarlin Holdings LLC, Ronald Kilgarlin, Shawn Kilgarlin, and Bradley Herriage's motion to dismiss plaintiff UCP Biosciences, Inc.'s second through eighth claims. *See* Dkt. No. 24.  Defendants contend that UCP's lawsuit is nothing more than a contract dispute and, therefore, UCP's fraud-based claims must be dismissed.  The Court concludes that UCP fails to establish the requisite intent to defraud and therefore GRANTS Defendants' motion to dismiss with leave to amend.  Because no claims remain against Biostat, Kilgarlin Holdings, and the individual defendants, the Court does not address Defendants' arguments regarding those defendants' liability under the alter ego or single business entity theories of liability.

## I. Background

### A. Factual Allegations in the Complaint

The allegations in UCP's complaint are assumed true for the purposes of this motion.

UCP Biosciences, Inc. is a manufacturer and supplier of *in vitro* diagnostic tests. *See* Dkt. No. 1 ("Compl.") ¶¶ 4, 20. In April 2008, UCP began to do business with American Screening, LLC ("ASC"), a medical device distributor. *Id.* ¶¶ 5–7, 22. Through its owner and director, Ronald Kilgarlin (or "Ron Kilgarlin"), ASC entered into an agreement with UCP where ASC would purchase drug screening devices from UCP. *Id.* ¶¶ 10, 22–23. Over the course of their relationship, ASC made multiple purchase orders, each one identifying the type of device, quantity, and price. *Id.* In turn, UCP would fulfill ASC's orders and issue an invoice accordingly. *Id.* ¶¶ 26–27. Under the terms of the parties' agreement, ASC was required to pay the amount reflected in each invoice within 30 days of the invoice or incur further charges. *Id.* ¶ 27.

However, ASC consistently failed to meet its payment obligations even though it continued to issue purchase orders for UCP devices. *Id.* ¶¶ 33, 35, 37, 40. At the same time, ASC represented to UCP that it would make substantial weekly payments towards its outstanding balance. *Id* ¶ 35. Whenever UCP would check in with ASC to inquire about the status of its payments and its outstanding balance, ASC continued to reassure UCP that its payments were forthcoming. *See id.* ¶ 36. On January 31, 2018, for example, Ron Kilgarlin reassured UCP that they "[we]re monitoring this closely and will not skip payments." *Id.*

In June 2018, concerned about ASC's growing debt, a UCP representative met with Ron Kilgarlin to discuss payment. *Id.* ¶ 41. Ron Kilgarlin reassured UCP that ASC would make good on its payment obligations. *Id.* He also led the UCP representative on a tour of the facilities for his new venture, Biostat Laboratories. *Id.* Ron Kilgarlin boasted that ASC alone was worth $60 million and suggested that Biostat would become successful as well. *Id.* UCP believed that ASC thus had the ability and intent to pay its debt and

continued to fulfill ASC's future purchase orders. *Id.*

By fall of 2018, however, ASC continued to fall behind on its payments. *Id.* ¶ 44. UCP sought to place ASC on cash account and update its price quotations due to the size of ASC's outstanding balance. *Id.* Ron Kilgarlin, however, proposed to give UCP an equity interest in ASC and Biostat to settle ASC's outstanding debt. *Id.* ¶ 46. Between October 2018 and December 2018, Ron Kilgarlin represented to UCP that he was working to prepare his proposal and suggested that the parties continue with their preexisting arrangement in the interim. *Id.* ¶¶ 48–51. On January 18, 2019, UCP notified ASC that it would no longer fulfill open purchase orders until ASC provided a detailed and mutually favorable proposal to resolve ASC's debt. *Id.* ¶ 55. A few days later, ASC eventually sent UCP a two-page proposal to exchange equity to settle its debt. *Id.* ¶ 52. ASC's proposal, however, lacked supporting documentation that would allow UCP to independently verify and evaluate the terms of the proposal. *Id.* When UCP requested certified financials for review, ASC agreed to provide them, but did not do so. *Id.* ¶ 74.

In February 2019, Brad Herriage, ASC and Biostat's controller, contacted UCP and promised that ASC would begin making weekly payments of at least $150,000. *Id.* ¶ 56. UCP accepted Herriage's proposal and continued to fulfill ASC's purchase orders without placing ASC on cash account. *Id.* ¶¶ 58–59. After a few weeks, however, ASC began to miss payments yet again. *Id.* ¶ 60.

In November 2019, Ron Kilgarlin renewed his proposal to settle ASC's outstanding debt for equity in ASC. *Id.* ¶ 74. UCP again requested financials for review, but ASC has yet to produce them. *Id.*

UCP and ASC continue to do business, but UCP now requires ASC to prepay the full amount of each order. *See id.* ¶ 75. As of January 31, 2020, ASC had outstanding balances on 778 invoices, totaling $15,720,778.39 plus $3,722,329.78 in accrued interest. *Id.* ¶ 33.

**B.   Procedural History**

UCP filed its complaint on February 5, 2020, alleging: (1) breach of contract; (2)

3

1  promise without intent to perform; (3) intentional misrepresentation; (4) negligent
2  misrepresentation; (5) violation of the Racketeer Influenced and Corrupt Organizations Act
3  ("RICO"), 18 U.S.C. § 1962(c); (6) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (7)
4  violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
5  §§ 17200, *et seq.*; and (8) unjust enrichment. *See* Compl. Defendants move to dismiss
6  claims two through eight. *See* Dkt. No. 24. All parties have consented to the jurisdiction
7  of a magistrate judge. *See* Dkt. Nos. 7, 13.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the most favorable light to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint need not give detailed factual allegations but must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a motion to dismiss, the plaintiff should be given leave to amend unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

### A. Fraud and Misrepresentation Claims

In their second, third, and fourth causes of action, UCP alleges that ASC, Ron Kilgarlin, Shawn Kilgarlin, and Brad Herriage conducted various forms of fraud. *See* Compl. ¶¶ 92–114. Specifically, UCP alleges claims for fraud, intentional misrepresentation, and negligent misrepresentation. *Id.* Defendants argue that UCP fails

to sufficiently allege fraud or misrepresentation because UCP has not established that any of Defendants' statements were false or were made with an intent to deceive.

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)). Intentional misrepresentation claims require: "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." *Daniels v. Select Portfolio Serv., Inc.*, 246 Cal. App. 4th 1150, 1166 (2016) (citing *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013)). The elements for negligent misrepresentation only differ in the second element, which requires "the absence of reasonable grounds for believing the misrepresentation to be true instead of knowledge of its falsity." *Id.* (citing *Bock v. Hansen*, 225 Cal. App. 4th 215, 231 (2014)).

Under Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud or mistake" must be alleged with particularity. Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Although intent and other mental conditions may be alleged generally, conclusory allegations do not suffice. *See Senah, Inc. v. Xi'an Forstar S&T Co, Ltd*, No. 13-cv-04254-BLF, 2014 WL 6065895, at *2 (N.D. Cal. Nov. 12, 2014); *Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011). Thus, courts frequently reject fraud claims that rely on nothing more than a general allegation that the defendant never intended to keep their promises. *See, e.g.*, *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) ("Plaintiffs' fraud theory requires them to show more than a business deal gone bad for economic and non-fraudulent reasons."); *Richardson v. Reliance Nat. Indem. Co.*, No.

5

99-cv-2952-CRB, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000).

Here, UCP identifies two instances of alleged fraud. *See* Dkt. No. 30 at 5. First, ASC, through Ron Kilgarlin and Brad Herriage, promised to make payments on past due invoices and agreed to pay on new purchase orders. *See* Compl. ¶¶ 36, 37, 42, 56. Second, Ron Kilgarlin promised to provide a settlement proposal to resolve ASC's debt that included an equity interest in ASC and Biostat but failed to deliver on such a proposal. *Id.* ¶¶ 46, 49–51. According to UCP, these promises were approved and ratified by Ron and Shawn Kilgarlin through their role as ASC's executive officers even though Defendants had no intention to uphold those promises. *See* Dkt. No. 30 at 5–6.

UCP's allegations of fraudulent intent are not plausible. Rather, UCP's allegations are consistent with an innocuous alternative explanation: that ASC was simply unable to pay its bills and that Ron Kilgarlin could not provide a settlement proposal based on his off-the-cuff evaluation of ASC and Biostat's net worth. Under *Twombly* and *Iqbal*, it is not enough for UCP to "offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . ." *Id.* (citing *Twombly*, 550 U.S. at 554).

UCP first points to Defendants' repeated attempts to maintain the "production flow" to attribute an ulterior motive to Defendants. *See* Dkt. No. 30 at 6–7. UCP alleges that Defendants sought to stockpile UCP products on indefinite credit with no intent to ever pay for the products. But UCP's factual allegations to support its theory do not "exclude the possibility that the alternative explanation is true." *Century*, 720 F.3d at 1108. After all, it is not surprising that a company unable to pay its bills would want to operate on credit or that it would want to ensure a steady stream of production to avoid even more financial stress. Moreover, UCP and ASC continue to do business to this day. *See* Compl. ¶ 75. Likewise, UCP's allegation that ASC complained of defective and overpriced devices from time to time while continuing to buy UCP devices does not nudge its "claims

across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Similarly, UCP fails to allege fraudulent intent in connection with Ron Kilgarlin's promise to provide a settlement proposal by exchanging equity in ASC and Biostat for debt relief. As an initial matter, Ron Kilgarlin in fact provided at least two "equity-for-debt" proposal. *See* Compl. ¶¶ 48, 51, 52, 74. The fact that the proposal did not live up to the full scope of Ron Kilgarlin's promise does not establish that the initial promise was false when made. Because UCP fails to allege intent to defraud, UCP fails to state a claim for fraud or misrepresentation.

Accordingly, the Court GRANTS Defendants' motion to dismiss UCP's second claim for fraud, third claim for intentional misrepresentation, and fourth claim for negligent misrepresentation. Because additional facts could be alleged that would cure the deficiencies in those claims, dismissal is with leave to amend.

### B.   RICO and RICO Conspiracy Claims

RICO prohibits an entity from "conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions." *Sedima v. Imrex Co.*, 473 U.S. 479, 483, 105 S. Ct. 3275, 3278 (1985) (citing 18 U.S.C. § 1962(c), (d)). "To state a claim under section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 496. A RICO conspiracy requires a substantive RICO violation and "an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v. Neapolitan*, 791 F.2d 489, 499 (7th Cir. 1986)).

Here, UCP fails to allege fraud and, therefore, has not established a pattern of racketeering activity. Accordingly, the Court GRANTS Defendants' motion to dismiss UCP's fifth claim for violation of RICO and sixth claim for conspiracy to violate RICO with leave to amend.

### C.   UCL Claim

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."

Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

UCP's claim under the UCL is predicated on their fraud and misrepresentation claims. *See* Dkt. No. 30 at 15. Because the UCP fails to state a claim for fraud, it also fails to state a claim under the UCL. Accordingly, the Court GRANTS Defendants' motion to dismiss UCP's seventh claim for violation of the UCL with leave to amend.

### D. Unjust Enrichment Claim

Under California law, there is no standalone cause of action for "unjust enrichment" or "restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)). However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

As a general rule, a quasi-contract claim "cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996). But "a party to an express contract can assert a claim for restitution based on unjust enrichment by 'alleg[ing in that cause of action] that the express contract is void or was rescinded.'" *Rutherford Holdings, LLC*, 223 Cal. App. 4th at 231 (alterations in original) (quoting *Lance Camper*, 44 Cal. App. 4th at 203)).

Thus, some California courts have concluded that plaintiffs are permitted to allege quasi-contract claims in the alternative even when they allege the existence of an enforceable contract. *See, e.g.*, *id.* (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012)). Other courts, however, have rejected such attempts at pleading in the alternative. *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).

Here, the Court will follow the latter line of cases. Quasi-contract claims seek

restitution "in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). Here, UCP does not allege that its contract with ASC was procured by fraud or is otherwise unenforceable. *Cf. Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) ("[The plaintiffs'] consent to wearing the bibs in exchange for participation in the tournaments defeats these claims [for quasi-contract].").

Accordingly, the Court GRANTS Defendants' motion to dismiss UCP's eighth claim for unjust enrichment. Because UCP's unjust enrichment claim is foreclosed by their own allegations, dismissal is without leave to amend.

## IV. Conclusion

The Court GRANTS Defendants' motion to dismiss. Claims two, three, four, five, six, and seven are dismissed with leave to amend. Claim eight is dismissed without leave to amend. UCP must file its amended complaint by **August 31, 2020**. UCP may not add additional claims or parties without further leave of the Court. If UCP fails to meaningfully amend their factual allegations, further dismissal will be with prejudice. Defendants need not answer the original complaint unless UCP gives notice that it will not file a first amended complaint.

This order does not alter the Court's July 29, 2020, order permitting jurisdictional discovery. *See* Dkt. No. 37. UCP is permitted to proceed with jurisdictional discovery.

**IT IS SO ORDERED.**

Dated: August 6, 2020

NATHANAEL M. COUSINS
United States Magistrate Judge

9